Carr, J.
This is an appeal from the refusal of the circuit court to grant a new trial, asked on the ground, that the verdict was contrary to evidence: and the first question raised in the argument, is, whether the bill of exceptions was well taken ? whether the statement therein given by the circuit court, is 'a state of the facts proved at the trial, or only of the evidence ? I feel pretty confident, that the judge meant it as a state of the facts; that is, that he did not intend to set down any fact, which he did not consider as a fact proved, though his manner of stating the facts, may make it seem, in some parts, like a statement of evidence. The judge refused the new trial, because he thought it was the province of the jury to decide, whether Callison, in taking the bond with Mastertorús assignment to him, without recourse to Mays, meant to take upon himself all risks, and among others, that of the bond having been, at the time of the assignment, already paid off? or only to take the risk of the insolvency of the obligors and of the assignor ? And it is most clear, that it was the province of the jury to decide this question; for they were to judge of the whole contract, and this was of the very essence of it. The true question for the judge, and for us, is, whether in deciding that the plaintiff' only meant to take the risk of insolvency, the verdict is contradicted by the evi *235 (lence ? And here, it is well to recollect what this court has said in other cases, and especially, in Ross v. Overton, 3 Call 309. that “ a new trial, because the verdict is contrary to evidence, ought to be granted, only in a case of a plain deviation, and not in a doubtful one, merely because the court, if on the jury, would have given a different verdict; since that would be to assume the province of the jury, whom the law has appointed the triers.” Is this verdict then plainly contradicted by the evidence ? I cannot say so. On the contrary, I strongly incline to think the jury was right. Here was a man selling a horse, for which he asked 160 dollars ; we are not told that this was an extravagant price. A bond for .100 dollars is offered in part: it purports to be for so much money, under the hands and seals of the parties. The holder says, “ I will get this bond assigned to you by the obligee, but then you must take it without recourse to me.” What was the meaning of this proposition ? What was the risk in the contemplation of the parties ? for this makes the contract. I think it was this : “ here is the evidence of a debt of 100 dollars, at this time owing from Withrow and Skeggs to Masterton; Masterton shall assign to you; and thus you cannot lose your money, unless a,11 three of them should prove insolvent; this risk you must run; and this risk (says the other party) I am willing to run.” How can we suppose, that it occurred to the mind of either, that there was any other risk ? The very possession of the bond, the claiming it as property, as something binding the obligors, precluded the idea that it was at that moment discharged, or satisfied; for then it was no bond; it bound nobody; it was not the representative of money. The bond too, was payable at a future date: who could have dreamed, that it was already mere wax and paper,—not a cent due on it ? I hold, then, that this contract was made on the basis, that the bond was unpaid, and that this risk did not enter into the contract. *236 But if this be not clearly so, we must all agree, that it is at least doubtful, whether this risk was contemplated; ánd that the jury has not committed so palpable a breach of propriety, has not gone so directly in the teeth of the facts proved, as to justify us in saying the court did wrong in refusing the new trial. I think the judgment should be affirmed.
The other judges concurred. Judgment affirmed.